IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Erie Division

| | | |
|---|---|---|
| DANKEN, LLC, | ) ) ) | Case No. 1:24-cv-288 |
| Plaintiff | ) ) ) | RICHARD A. LANZILLO |
| vs. | ) ) ) | Chief United States Magistrate Judge |
| | ) ) ) | MEMORANDUM ORDER ON MOTION TO COMPEL DISCOVERY |
| HIGHLAND FIELD SERVICES, LLC, | ) ) ) | RE: ECF NO. 28 |
| Defendant | ) | |

Defendant/Counterclaim Plaintiff, Highland Field Services, LLC ("HFS") has moved pursuant to Federal Rule of Civil Procedure 37 to compel discovery from Plaintiff/counterclaim Defendant, Danken, LLC ("Danken"). *See* ECF No. 28. HFS's motion challenges Danken's compliance with paragraph 5 of the Stipulated Order Regarding Discovery of Electronically Stored Information (ECF No. 26) ("ESI Order") and the sufficiency of several of Danken's answers to HFS's interrogatories. As detailed below, HFS's motion is GRANTED in part and DENIED in part.

I. Compliance with the ESI Order

Paragraph 5 of the ESI Order states:

> 5. SEARCH AND IDENTIFICATION The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, the responding parting will initiate a meet and confer about proposed methods to search ESI in order to identify ESI that is subject to production in discovery and/or filter out ESI that is likely not subject to discovery. The parties are permitted to use reasonable search methods to narrow down the ESI to

1

> be reviewed for production in discovery including use of search terms, technology assisted review, deduplication, and email threading, but those methods will be disclosed to the opposing party, upon request, and the parties agree to discuss and refine of those methods, where necessary, to locate discoverable ESI.

ECF No. 26, ¶ 5.

On March 6, 2025, HFS served interrogatories, requests for admission, and requests for production of documents on Danken. After a consented to extension, Danken served responses and objections to HFS's discovery on May 5, 2025. On May 5-6, 2025, Danken produced documents pursuant to HFS's request for production, which production consisted of approximately 207,000 documents. HFS characterizes this production as a "document dump" and asserts that it includes "tens of thousands of irrelevant and/or 'junk' emails." HFS specifies, for example, that Danken's production included more than 4,100 junk emails beginning with the letter "A" alone. These included thousands of emails transmitted under the Amazon.com domain. HFS argues that this over-production demonstrates Danken's failure to take reasonable actions to "filter out ESI that is likely not subject to discovery" as contemplated by the ESI Order. HFS raised its concerns and objections to Danken in writing and pursued its meet and confer obligation under the ESI Order.

HFS also argues that, despite the volume of documents produced by Danken, it failed to use search parameters reasonably calculated to identify documents responsive to its requests. On June 23, 2025, after HFS raised concerns regarding the production and the parties conferred in accordance with the ESI Order. Thereafter, Danken provided HFS with a list of 142 search terms it had used to collect documents. These search terms did not include several obvious terms, such as "Highland" and "HFS" and its email domains, "hfs-llc.com" and "srcx.com." Danken has

argued that it used other search terms sufficient to identify documents responsive to HFS's production requests, but it strains credulity that alternative terms would be adequate surrogates for such obvious search terms. In any event, Danken's failure to disclose any restrictive search terms or other limiters made the sufficiency of its production essentially unverifiable. In sum, the methodology Danken used to generate its initial production was fundamentally flawed and unverifiable. HFS also raised these concerns and objections to Danken in writing and again pursued its meet and confer obligation under the ESI Order.

After HFS pressed its objections to the initial production, Danken produced an additional 15,666 documents that it apparently identified by adding "Highland," "HFS," "hfs-llc.com," and "srcx.com" as additional search terms. While this made Danken's search more likely to capture additional relevant documents, it did not cure the over-inclusion problem with the original production or provide HFS with the additional information, such as restrictive search terms and other limiters, necessary to assess Danken's search methodology. As a result, Danken's supplemental production remained noncompliant with the ESI Order. HFS also raised these concerns and objections to Danken in writing and again pursued its meet and confer obligation under the ESI Order.

After Danken's supplemental production failed to resolve the parties' dispute, Danken unilaterally formulated and forwarded to HFS a list identifying the Boolean search terms, including limiters, that Danken used to identify documents responsive to each request for production served by HFS. These search terms reduced the volume of identified documents to approximately 19,000, a reduction of over 90% from Danken's original production. Significantly, Danken applied these new search terms only to the approximately 207,000 documents identified by Danken's original flawed search. In addition, HFS argues that several of the limiters included in the searches

potentially exclude responsive documents. The Court is unable to assess the merits of this argument without examining in detail the reduced production and the methodology that generated it. Such an examination would require an evidentiary hearing and possibly expert testimony and would significantly delay the progress of this case. Ultimately, however, this examination is unnecessary to resolve the ESI aspect of HFS's motion for two reasons. First, Danken's reduced production remains flawed for the same reasons its original and supplemental production were flawed. Danken's applied its Boolean searches to its original search results, which were generated by flawed methodology that made them vulnerable to both under and over-inclusion of documents. Because the "top of the funnel" was flawed, all results produced from it will be flawed. Second, the Boolean search parameters used to produce the final reduced production are unduly complex, making verification of their efficacy nearly impossible.

Given on the foregoing, the Court grants HFS's motion to compel as it relates to compliance with the ESI Order and directs the following corrective actions:

A. Within twenty (20) days of this Memorandum Order Danken shall (1) confirm to HFS in writing the identity of all custodians who are likely to have possession, custody, or control of documents responsive to HFS's request for production of documents and (2) provide to HFS a list of no more than thirty (30) search terms it believes are necessary to identify documents responsive to HFS's requests for production and identifying any proposed search limiters or exclusions.

B. Within ten (10) days of receipt of this information, HFS shall notify Danken in writing of (1) any additional custodians it believes may possess or control responsive documents, (2) any proposed additional search terms it believes are necessary to identify potentially responsive documents and search terms it believes should be

omitted to reduce possible over-production, and (3) any objections to search limiters or exclusions proposed by Danken. Once search terms have been identified, they are to be applied to all documents in the possession, custody, or control of the identified custodians rather than to the documents previously produced by Danken in its original, supplemental, or reduced productions. Consistent with the ESI Order, counsel and the parties shall work collaboratively in this process and, provided the parties agree in writing in advance, they may modify the steps outlined above to the extent they believe doing so will result in a compliant production of documents and avoid future disputes.

C. Once the foregoing process has identified potentially responsive documents, (1) Danken shall notify HFS of the volume of the identified documents and provide it with the option of receiving or reviewing all such potentially responsive documents, excluding documents withheld based on a claim of privilege; (2) Danken shall notify HFS in writing of the process and procedures it intends to utilize to identify from the volume of potentially responsive documents those documents that are to be produced in response to each of HFS's requests for production. To the extent such final identification and production of documents is to be done manually, Danken shall identify to HFS in writing the individuals responsible for performing the final review and production. To the extent such final identification and production of documents is proposed to be done by other means, including, potentially, using refined search terms, technology assisted review, deduplication, and email threading, Danken shall disclose those methods to HFS in writing, and the parties shall discuss and refine those methods in writing.

Consistent with the letter and spirit of the ESI Order, counsel and the parties shall work collaboratively to effectuate the foregoing and, provided the parties agree in writing in advance, they may modify any of the steps outlined above to the extent they agree that doing so will result in a compliant production and reduce the potential for future disputes. Danken's privilege log shall include the date of the document, the identity of the author(s), the identity of all recipients, the privilege asserted, and a brief description of the privileged content.

II.     Interrogatories

HFS' motion also seeks to compel Danken to supplement several of its answers to HFS's interrogatories. The Court addresses each challenged interrogatory answer as follows:

| No. | Interrogatory | Dispute | Ruling |
|---|---|---|---|
| 1 | Identify the person answering these interrogatories, all persons who assisted in the preparation of the answers, and state how each person participated in the preparation of the answers. | HFS asserts that Danken's response is incomplete. Lacks specificity as to how Scavone, Butcofski and McCollums participated in the preparation of answers | Motion granted. Danken shall completely specify each individual's role in preparing interrogatory answers. |
| 2 | Identify any provisions of the 2021 Agreement or 2023 Agreement You rely upon for Your claim that HFS had to deliver Wastewater of a certain quality or having a specific gravity, density or other specifications | HFS challenges Danken's objection that the interrogatory calls for legal conclusions as to the term "deliver." | Motion denied. Although Danken objects, it answers over the objection and the answer is sufficient. |
| 3 | Identify the provisions of Your EPA Permit that You rely upon for Your claim that HFS had to deliver Wastewater of a certain quality or having a specific gravity, density or other specifications. | HFS challenges Danken's objection that the interrogatory calls for legal conclusions as to the term "deliver." | Motion denied. Although Danken objects, it answers over the objection and the answer is sufficient. |
| 4 | Identify the provisions of any other Document or agreement | HFS challenges Danken's objection | Motion granted. Although Danken answers over its |

6

| No. | Interrogatory | Dispute | Ruling |
|---|---|---|---|
|  | You rely upon for Your claim that HFS had to deliver Wastewater of a certain quality or having a specific gravity, density or other specifications. | that the interrogatory calls for legal conclusions as to the term "deliver." | objection, its answer is non-responsive. Objection is overruled. |
| 5 | Identify the first date that You advised HFS that its Wastewater was of "abysmal" quality, and Identify all Persons involved. | HFS challenges Danken's objection that the information is "already known" to the HFS or is the possession of HFS. | Motion granted in part. Although Danken objects, it answers over its objection. Its answer, however, lacks reasonable specificity unless it truly does not know the requested date(s). Its obligation is to respond with available precision. |
| 6 | Identify the first date that Plaintiff did not accept HFS's Wastewater deliveries due to assertions of "abysmal water quality." | HFS challenges Danken's objection that this interrogatory calls for a legal conclusion as to the meaning of the term "deliver" and the information is already known to HFS. | Motion granted in part. Although Danken objects, it answers over its objection. Its answer, however, lacks reasonable specificity unless it truly does not know the requested date(s). Its obligation is to respond as precise as possible. |
| 7 | Identify how many deliveries of Wastewater Plaintiff accepted from HFS from May 1, 2021 up until the date of first refusal identified in Interrogatory No. 6. | HFS challenges Danken's objection that this interrogatory calls for a legal conclusion as to the meaning of the term "deliver" and the information is already known to HFS. | Motion granted. Objection overruled. |
| 8 | Describe with specificity what constitutes Wastewater of "abysmal quality" as that phrase is used in Danken's Complaint. | HFS argues that Danken's response was unresponsive and failed to describe "other material and/or substances" referenced in its answer. | Motion granted in part. Danken shall identify the "other material and/or substances" referenced in the answer. |

| No. | Interrogatory | Dispute | Ruling |
|---|---|---|---|
| 9 | Describe with specificity how HFS was producing and/or delivering "Wastewater of abysmal quality" as alleged in the Complaint | HFS challenges Danken's objection that the interrogatory calls for a legal conclusion as to the meaning of the term "deliver," Danken failed to offer an explanation for the term "producing." | Motion denied. Although Danken objects, it answers over the objection and the answer is sufficient. |
| 10 | Describe with specificity the factual basis for the allegations in Paragraph 72 of the Complaint that "[HFS] began refusing to and failing to dilute the Wastewater it directed to the Povlick [sic] Facility such that all of that Wastewater fell below a specific gravity measurement of 1.18," including but not limited to (a) who at Danken requested dilution of the Wastewater; (b) who at HFS purportedly refused to dilute the Wastewater; and (c) the date, method and content of such requests and/or refusals. | HFS challenges Danken's objection that this information is already known to HFS or is in the possession of HFS. | Motion denied. Although Danken objects, it answers over the objection and the answer is sufficient. |
| 11 | Describe with specificity the factual basis for the allegations in Paragraph 74 of the Complaint that "[HFS] was aware at all relevant times of Danken's inability to dilute Wastewater [HFS] directed to the Povlick [sic] Facility due to the lack of spare injection capacity," including but not limited to (a) the Person(s) at HFS with the claimed awareness; (b) the basis of the claimed awareness; and (c) the date of the claimed awareness. | HFS challenges Danken's objection that this information is already known to HFS or is in the possession of HFS. | Motion denied. Although Danken objects, it answers over the objection and the answer is sufficient. |

| No. | Interrogatory | Dispute | Ruling |
|---|---|---|---|
| 12 | State the factual basis for the allegations in Paragraphs 116 and 117 of the Complaint that Highland has failed to fully pay Danken for "Highland's Committed Monthly Volume of Wastewater capacity" for July 2024, August 2024, and September 2024, despite the termination of the 2023 Agreement by HFS. | HFS challenges Danken's objection that this information is already known to HFS or is in the possession of HFS. | Motion denied. Although Danken objects, it answers over the objection and the answer is sufficient. |
| 13 | Identify any provisions of the 2023 Agreement or any other Document that You rely upon for Your claim that HFS's transport trucks could not arrive and/or idle at the Povlik Facility prior to the stated Operating Hours. | HFS challenges Danken's objection that this information is already known to HFS or is in the possession of HFS. | Motion denied. Although Danken objects, it answers over the objection and the answer is sufficient. |
| 15 | Describe with specificity the factual basis for the allegations in Paragraph 136 of the Complaint that "[HFS] was at all relevant times aware of the 1.18 specific gravity measurement required in the Permit for Wastewater injections into the Povlick [sic] Facility." | HFS challenges Danken's objection that this information is already known to HFS or is in the possession of HFS. | Motion denied. Although Danken objects, it answers over the objection and the answer is sufficient. |
| 16 | Describe with specificity Plaintiff's policies and procedures regarding the cleaning and maintenance of its Povlik Facility | HFS asserts that Danken provided a vague, insufficient response. | Motion granted. Danken shall supplement its answer regarding cleaning and maintenance procedures at the Povlik facility. |
| 17 | Identify each instance in which the Povlik Facility has had to shut down for cleaning and maintenance for the last five years, and Describe with specificity the reasons for each shutdown. | HFS challenges Danken's objection that this information is already known to HFS or is in possession of HFS. | Motion denied. Although Danken objects, it answers over the objection and the answer is sufficient. |
| 18 | In the last five years, Identify and Describe with specificity all Communications You have had with the EPA | HFS challenges Danken's objection that this interrogatory is | Motion denied. Danken's objection is well-taken. |

| No. | Interrogatory | Dispute | Ruling |
|---|---|---|---|
|  | regarding the EPA Permit, including but not limited to Communications involving compliance with the EPA Permit, or any inquiries, requests, reviews or investigations by the EPA related to Your EPA Permit or the Povlik Facility. | overbroad, unduly burdensome, and oppressive. |  |
| 20 | Identify all witnesses that Danken intends to call to provide testimony in this matter including trial testimony. | HFS challenges Danken's objection that this query is premature | Motion granted. Danken shall supplement. |
| 21 | Identify each person Danken intends to call as an expert to provide testimony in this matter and state the subject matter of each person's expected testimony. | HFS challenges Danken's objection that this query is premature | Motion denied as Danken answers that it has not yet retained a trial expert. Danken shall timely supplement as required by Federal Rule of Civil Procedure 26 upon such retention. |
| 22 | Identify all Documents and exhibits (including demonstrative exhibits) that Danken intends to use or introduce at trial | Danken refers HFS to its responses to requests for production. | Motion granted. Danken shall supplement. |
| 23 | Describe with specificity any and all damages You claim to have suffered in this lawsuit and whether they resulted from any alleged action or inaction of HFS or any other person or entity. With respect to each element of damage claimed, Identify: (a) the amount of damages sought; (b) how and why You believe HFS caused You to suffer such damages; (c) whether any other person or entity participated in causing or was involved with the claimed damages; (d) Your method of calculating the amount of damages You claim; (e) any and all documents within | HFS challenges Danken's objection that the requested information is duplicative, unreasonably cumulative, and oppressive; information sought is known to HFS or in possession of HFS. | Motion granted. Danken shall supplement. |

| No. | Interrogatory | Dispute | Ruling |
|---|---|---|---|
| | Your possession, custody or control which support Your Response to this Interrogatory; and (f) all persons with knowledge of the claimed damages and the details of their knowledge. | | |

To the extent the Court has granted HFS' motion to compel Danken to supplement its answers to interrogatories, Danken shall do so by September 5, 2025.

So ordered this 14th day of August, 2025.

BY THE COURT:

_____
RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE