IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANKEN, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:24-cv-288** |
| **v.** | ) | |
| | ) | |
| **HIGHLAND FIELD SERVICES, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM**

**Susan Paradise Baxter, United States District Judge**

In this civil action, Danken, LLC ("Danken") has sued Highland Field Services, LLC ("Highland") for alleged breach of contract, negligence, and private nuisance based on the allegation that the wastewater Highland delivered to Danken's water treatment facilities did not comply with the specific gravity measurement of 1.18, as required by Danken's federal permit. Highland has countersued Danken for a declaratory judgment, for alleged breach of contract, and for indemnity.

Because the parties lack diversity of citizenship, the Court directed them to file statements supporting their assertion that the Court has federal question jurisdiction over their dispute, pursuant to 28 U.S.C. §1331. *See* ECF No. 45. Danken and Highland have since filed their respective statements. *See* ECF Nos. 46 and 47. For the reasons that follow, the Court finds that it lacks subject matter jurisdiction over this lawsuit. Accordingly, the case will be dismissed without prejudice, so that the parties may continue to litigate their claims in the appropriate state venue.

## I. Introduction[1]

Danken is a limited liability company that operates certain injection wells for the disposal of wastewater, including a facility identified as the "John Povlick No. 1" or "Povlick Facility" located in Huston Township, Pennsylvania. ECF No. 1, Compl. ¶¶1, 33. The Povlick Facility has a safe monthly wastewater injection capacity of 75,000 barrels per month. *Id.* at ¶34. It is subject to a permit (the "Permit") that was issued by the U.S. Environmental Protection Agency ("EPA") in compliance with the Safe Drinking Water Act, 42 U.S.C. §§300f-300j-11 and its implementing regulations, 40 C.F.R. §§144-147. *Id.* at ¶¶35-37. The Permit limits wastewater injected into the Povlick Facility to a specific gravity of 1.18 and requires any truckload exceeding that measure to be diluted with "produced fluids"[2] such that its specific gravity falls below a measure of 1.18. *Id.* at ¶38. The Permit requires Danken to "at all times properly operate and maintain all facilities and systems of treatment control and related appurtenances which are installed or used by [Danken] to achieve compliance" with the Permit's conditions, but it does not specifically name the party who is required to add produced fluids to wastewater truckloads exceeding a specific gravity measurement of 1.18. *Id.* at ¶¶40-41.

Highland is a limited liability company engaged in water management related to gas and oil production and the hydraulic fracturing industry. Compl. ¶¶12, 30. As part of its operations, Highland manages certain wastewaters (hereafter, "Wastewater") that have been separated or removed from oil and gas in connection with exploration and production operations. *Id.* at ¶32.

---

[1] For present purposes the Court accepts as true the following background facts, as set forth in Plaintiff's Complaint. ECF No. 1.

[2] "Produced fluids" are identified in the Permit as fluids solely from oil and gas production activities with a specific gravity lower than a measure of 1.18. ECF No. 1, Compl. ¶39.

On May 1, 2021, the parties entered into an agreement (the "2021 Agreement") pursuant to which Highland purchased, and Danken committed to accept, 45,000 barrels of Wastewater capacity per month for injection at the Povlick Facility. Compl. ¶44. The remaining 30,000 barrels of spare capacity at the Povlick Facility allowed safe injection of produced fluids to dilute any Wastewater truckloads Highland directed there with a specific gravity exceeding 1.18. *Id.* at ¶45.

This agreement was superseded by another agreement, entered into on November 1, 2023 (the "2023 Agreement"), whereby Highland purchased, and Danken committed to accept, a monthly capacity of 75,000 barrels of Wastewater for injection at the Povlick Facility, with a maximum limit of 3,200 barrels of Wastewater per day. Compl. ¶48. Highland's purchase of 75,000 barrels of Wastewater injection capacity per month constituted the entire safe injection capacity at the Povlick Facility. *Id.* at ¶52. Highland was allegedly aware that the 2023 Agreement committed it to purchase the entire safe injection capacity at the Povlick Facility, and this precluded the Povlick Facility from selling any further injection capacity to another entity. *Id.* at ¶¶53-54. This also meant that the Povlick Facility lacked any spare injection capacity for purposes of adding barrels of produced fluids to dilute the specific gravity of the Wastewater Highland directed to the Povlick Facility. *Id.* at ¶55.

According to the Complaint, Highland directed Wastewater to the Povlick Facility at two offload stations designated as a "Custody Transfer Point." Compl. ¶56. At these stations, Danken would conduct tests on the Wastewater to determine if the specific gravity of the truckload exceeded 1.18. *See id.* at ¶¶57-58.

In May 2024, Highland allegedly began refusing and/or failing to dilute the Wastewater it directed to the Povlick Facility so as to ensure that the Wastewater fell below a specific gravity

measurement of 1.18. Compl. ¶72. Meanwhile, because Highland had purchased the maximum injection capacity at the Povlick Facility under the 2023 Agreement, Danken lacked any spare injection capacity to safely add Produced Fluids to dilute the Wastewater that Highland directed to the Facility. *Id.* at ¶73. Danken claims that Highland began directing non-diluted Wastewater of "abysmal quality" beginning in May 2024, which caused damage to the Povlick Facility. *Id.* at ¶75. As a result, Danken shut down the Povlick Facility on several days in June 2024 for cleaning and maintenance. *Id.* at ¶¶76-77.

Thereafter, in July, Highland continued to direct non-diluted Wastewater to the Povlick Facility. According to Danken, the "true extent of the abysmal quality" of the Wastewater "was not apparent at the time Danken tested it at the Custody Transfer Point." Compl. ¶85; *see also id.* at ¶¶78-84. Eventually, Danken had to shut down the Povlick Facility for further cleaning and maintenance over the course of twenty-one (21) days in July 2024. *Id.* at ¶94.

Problems apparently continued into August 2024, even after Danken raised concerns about the quality of Wastewater that Highland was delivering to the Povlick Facility. *See* Compl. ¶¶93, 95-98, 100-101. Eventually, on August 26, 2024, Highland issued a letter to Danken indicating that it was terminating the 2023 Agreement. Compl. ¶107.

Danken contends that the 2023 Agreement is a "take or pay contract," pursuant to which Highland is contractually obligated to pay certain designated disposal fees even if the actual number of Wastewater injection barrels that Highland directs to the Povlick Facility falls short of the 75,000 monthly limit. Compl. ¶¶62-65. Danken claims that Highland made an incomplete payment for July 2024 and has not paid any amount since that time. *Id.* at ¶108.

As a result of the foregoing events and allegations, Danken filed a four-count complaint against Highland, asserting claims for breach of contract (Counts I and II), negligence (Count

III), and private nuisance (Count IV). ECF No. 1. The complaint asserted that this Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. §1331 (federal question jurisdiction), §1332 (diversity-of-citizenship jurisdiction) and §1367 (supplemental jurisdiction). *Id.* at ¶¶18-26. Highland answered the complaint and asserted counterclaims for declaratory judgment (Counterclaim I), breach of contract (Counterclaim II), and indemnity (Counterclaim III). ECF No. 7.

Based on information contained in Highland's Rule 7.1 Corporate Disclosure Statement, the parties agree that diversity of citizenship does not exist in this case. Consequently, original jurisdiction exists, if at all, only by virtue of federal question jurisdiction under 28 U.S.C. §1331. Both Danken and Highland contend that Section 1331 confers jurisdiction upon this court, despite the fact that the claims in the complaint arise solely under state law.

Consistent with its obligations under Federal Rule of Civil Procedure 12(h)(3), the Court directed the parties to submit statements expounding upon their belief that the Court has subject matter jurisdiction under 28 U.S.C. §1331. ECF No. 45. The parties having done so, *see* ECF Nos. 46 and 47, the Court's jurisdictional analysis follows.

## II. Discussion

"It is axiomatic that federal courts are courts of limited jurisdiction, and as such are under a continuing duty to satisfy themselves of their jurisdiction before proceeding to the merits of any case." *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1049 (3d Cir. 1993) (citations omitted); *see Pavlov v. Wilmington Savings Fund Society*, No. 25CV7362, 2026 WL 3027048, at *2 (E.D. Pa. Oct. 8, 2026). Consequently, under Rule 12(h)(3) of the Federal Rules of Civil Procedure, the Court must dismiss any claims over which it lacks subject matter jurisdiction.

Fed. R. Civ. P. 12(h)(3). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *Pavlov,* 2026 WL 3027048, at *2 (citing *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence.")).

As noted, both Danken and Highland assert that the Court has original jurisdiction under 28 U.S.C. §1331, which empowers the Court to hear "all civil actions arising under the Constitution, laws, or treaties of the United States." A matter may "arise under" federal law in one of two ways. *Gunn v. Minton*, 568 U.S. 251, 257 (2013). The first and most common is when "federal law creates the cause of action asserted." *Id.* The second involves a "special and small category" of cases where a substantial federal issue is embedded in a state law claim. *See id.* at 258 (citation and internal quotes omitted); *see also MHA LLC v. HealthFirst, Inc.*, 629 F. App'x 409, 412 (3d Cir. Nov. 17, 2015) (discussing "embedded jurisdiction). To fall within this "slim" category of cases, the state law claim must involve a federal issue that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn,* 568 U.S. at 258. In either situation, "the party asserting jurisdiction must satisfy the 'well-pleaded complaint rule,' which mandates that the grounds for jurisdiction be clear on the face of the pleading that initiates the case." *Goldman v. Citigroup Glob. Mkts. Inc.*, 834 F.3d 242, 249 (3d Cir. 2016); *see Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987) ("[F]ederal jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint.").

Here, none of the four claims asserted in Danken's complaint is predicated on a federal cause of action. Moreover, the counterclaims in Highland's answer cannot serve as a basis of original jurisdiction. *See Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826,

831 (2002) ("[A] counterclaim—which appears as part of the defendant's answer, not as part of the plaintiff's complaint—cannot serve as the basis for 'arising under' jurisdiction."). Thus, without any federal claims in the case, the usual basis for §1331 jurisdiction does not exist.

Instead, both parties argue that the some or all of Danken's claims contain embedded federal issues such that the claims "arise under" federal law. Highland argues that all of the claims in the complaint confer Section 1331 jurisdiction. Danken argues only that the negligence and private nuisance claims in Counts III and IV of the complaint contain "embedded" federal issues. Having carefully considered the matter, the Court finds that none of Plaintiff's state law claims can be said to "arise" under federal law.

(i)

First, no federal issue is "necessarily raised" by the claims in the complaint. A state law claim "necessarily" raises a federal issue if "an element of the state law claim requires construction of federal law." *MHA LLC v. HealthFirst, Inc.*, 629 F. App'x 409, 412–13 (3d Cir. 2015) (citing *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163 (3d Cir. 2014), *aff'd*, 578 U.S. 374 (2016)). No element of Plaintiffs' various claims requires the Court to interpret federal law.

Counts I and II involve breach of contract claims. To establish a claim for breach of contract in Pennsylvania, a plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of the contract; and (3) resultant damages. *Tinkelman v. Liberty Mut. Ins. Co.*, No. 3:25CV632, 2026 WL 2574329, at *3 (M.D. Pa. Aug. 31, 2026) (citing *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016)). In Count I of the complaint, Danken asserts that Highland breached the 2023 Agreement by failing to pay sums owed under that agreement. In Count II, Danken asserts

that Highland breached the 2023 Agreement by directing Wastewater to the Povlick Facility outside of contractually specified operating hours. In either case, the duties that Highland allegedly breached are defined and determined solely by reference to the 2023 Agreement.

Counts III and IV involve tort claims. Danken alleges in Count III that Highland was negligent in delivering Wastewater of "abysmal" quality to the Povlick Facility. Danken claims in Count IV that Highland's delivery of "abysmal" Wastewater constituted a private nuisance in that it unreasonably interfered with Danken's use and enjoyment of the Povlick Facility. Under Pennsylvania law, a private nuisance exists "when a person's conduct invades another's interest in the private use and enjoyment of land, and that invasion is either intentional and unreasonable or unintentional but negligent." *Hartel v. Beazer East, Inc.,* Civil Action No. 23-1629, 2025 WL 964007 at *8 (W.D. Pa. Mar. 31, 2025) (internal quotation marks and citation omitted). In Pennsylvania, negligence requires a showing of four elements: "'(1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) a causal relationship between the breach and the resulting injury suffered by the plaintiff; and (4) actual loss suffered by the plaintiff.'" *Carter v. Allegheny Cty. Sheriff's Office*, No. 2:24-CV-00026, 2026 WL 2858330, at *7 (W.D. Pa. Sept. 23, 2026) (quoting *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1126 (Pa. Super. Ct. 2004)). Here, the parties have not shown that it is necessary to construe federal law to determine whether Danken can establish the elements of its claims for negligence and private nuisance.

Relevantly, the Complaint asserts that Highland was aware, upon entering into the 2023 Agreement, that Danken's EPA Permit required any Wastewater injected into the Povlick Facility to have a specific gravity measurement of 1.18. *See* ECF No. 1, Compl. ¶144. The Complaint further states that there is "a substantial federal interest in ensuring uniform

interpretation of who is obligated under the EPA-issued Permit and similar such permits to ensure the Wastewater intended for injection meets required specifications, including, but not limited to, specific gravity measurements, and is sufficient quality for injection." *Id.* at ¶¶150, 162. But the Complaint does not identify any federal statute or regulation in support of the suggestion that the Permit itself -- which was expressly issued to Danken -- imposed obligations on Highland. Moreover, in Pennsylvania, tort liability arises from the breach of a social duty that is owed to others as a matter of public policy, as opposed to a duty arising solely from contractual terms. *See Bruno v. Erie Ins. Co.,* 106 A.3d 48, 68 (Pa. 2014) (distinguishing tort claims from contractual claims and noting that the former "involves the defendant's violation of a broader social duty owed to all individuals"). Thus, to the extent Highland owed Danken any duty beyond those set forth in the 2023 Agreement, that duty arises by operation of state tort law rather than by operation of the Permit itself. Alternatively, to the extent Danken is arguing that Highland had a contractual duty to comply with the terms of Danken's EPA Permit, that issue must be resolved by reference to the 2023 Agreement and principles of state contract law.

In sum, Highland's liability in this case must be established by resort to issues that are governed by state law rather than by federal law.

(ii)

Second, the parties have not shown that a federal issue embedded in Plaintiff's claims is "actually disputed." To reiterate, the parties have not identified any dispute they have over a particular federal statutory or regulatory text. Instead, they highlight a provision in the Permit which states: "If the specific gravity of the injection fluid is greater than 1.18, it shall be adjusted by adding produce fluids . . . so that the resulting specific gravity is 1.18 or less." ECF No. 1-3 at 7, ¶2 (Permit Part II(B)(2)); *see also* Compl. ¶38 (referencing same). As the Complaint

acknowledges, "[t]he Permit does not address who is required to add produced fluids to Wastewater truckloads exceeding a specific gravity measurement of 1.18." Compl. ¶40. But notably, Highland disputes that it has any obligation to comply with the terms of Danken's Permit. *See* Compl. ¶¶145, 158 ("Highland disputes that it must ensure the Wastewater it had directed to the Povlick Facility complies with the specific gravity measurement of 1.18 as required in the Permit."). "A federal issue is actually disputed . . . if there is a dispute over the meaning of the text of a particular federal statute," as opposed to a mere disagreement about "whether a federal law applies to the parties' specific circumstances." *Mansour v. City of Jersey City*, Civil Action No. 24-06178, 2024 WL 5301742, at *5 (D.N.J. Dec. 20, 2024), *report and recommendation adopted*, 2025 WL 50367 (D.N.J. Jan. 7, 2025), and *report and recommendation adopted*, 2025 WL 3313015 (D.N.J. Feb. 13, 2025). Here, at most, the Complaint evidences a dispute about whether a particular provision in Danken's Permit can be imputed to Highland. In other words, Highland disputes the applicability of the Permit as it relates to Highland's conduct. In this Court's view, no federal issue is sufficiently disputed to satisfy the "embedded jurisdiction" standard.

(iii)

Finally, any federal issue that arguably exists is not "substantial" enough to support Section 1331 jurisdiction. A "substantial federal issue" is one that is "significant 'to the federal system' as opposed to only the parties." *MHA LLC v. HealthFirst, Inc.*, 629 F. App'x 409, 413 (3d Cir. Nov. 17, 2015) (quoting *Gunn*, 568 U.S. at 260). To that end, "the Supreme Court has distinguished cases ... that present a 'nearly pure issue of law' that would govern numerous other cases, from those that are 'fact-bound and situation-specific.'" *Id.* (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700-01 (2006)). The "prototypical" case is one where

the federal government itself seeks access to a federal forum, or an action of the federal government must be adjudicated, or the validity of a statute is in question. *See id.* at 413 n.6 and 414. None of these circumstances are present here. Danken has alleged a "substantial federal interest in ensuring uniform interpretation of who is obligated under the EPA-issued Permit and similar such permits to ensure the Wastewater intended for injection meets required specifications." Compl. ¶¶150, 162. But there is little basis for assuming that any ruling this Court might issue concerning Highland's obligations would have wide application to other federal cases. Rather, the issue presented is fact sensitive and likely depends on the nature of the services Highland offered to Danken and the agreement that the parties entered into with regard to Highland's delivery of wastewater.

(iv)

Based on the foregoing determinations, the Court need not address whether the purported federal issue "is capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn,* 568 U.S. at 258. "Because this case does not 'necessarily raise' a federal issue that is 'actually disputed and substantial,'" this Court "may not exercise subject matter jurisdiction based on 'embedded jurisdiction.'" *MHA LLC v. HealthFirst, Inc.*, 629 F. App'x 409, 415 (3d Cir. Nov. 17, 2015).

## III. Conclusion

In sum, the Court concludes that it lacks subject matter jurisdiction over the claims in this case. Accordingly, the within civil action will be dismissed without prejudice, so that the parties may continue to litigate their claims in the appropriate state court forum.

An appropriate Order follows.

Date: October 22, 2026

Susan Paradise Baxter
United States District Judge